OPINION OF THE COURT
Richard Lee Price, J.
This informal motion to renew, made upon letters and affidavits, is accepted as a motion to renew petitioner’s earlier motion to restore this CPLR article 78 proceeding, the decision of which was held in abeyance by this court on April 15, 1982, pending the court’s receipt of respondent’s answer. Petitioner thereafter notified this court that respondent’s answer had indeed been served upon him some months earlier, and with the agreement of the respondent, that answer was filed with the court. Thus this disposition on the merits.
PROCEDURAL BACKGROUND
On October 25, 1979, petitioner, a tenant in apartment 2B at 324 East 35th Street in Manhattan, suspecting a rent overcharge, contacted his landlord, Green Mountain Ventures, and requested copies of the prior leases for his apartment, in accordance with subdivision A of section 42 of the Code of the Rent Stabilization Association of New *1005 York City, Inc. (Code). This request was ignored. Thereafter, on November 16, 1979, petitioner, an attorney, filed a complaint with the Rent Stabilization Association alleging a rent overcharge and failure to comply with subdivision A of section 42. After failing to hear from the association for approximately six months, petitioner filed another complaint on May 14, 1980, alleging similar violations.
Amendments to petitioner’s second complaint were made and accepted, and on December 4, 1980, the respondent, the Conciliation and Appeals Board (CAB), rendered its first decision. This decision directed the landlord to comply with subdivision A of section 42 and to supply petitioner with prior leases and/or rent ledger sheets, or to risk expulsion from the association. The landlord was notified of the decision on December 19, 1980, and was directed to respond within 10 days. The landlord responded by letter dated December 29, 1980, which was logged in by the respondent as received on January 8, 1981.
Petitioner, unaware that the landlord had responded, completed and filed a statement of noncompliance with the respondent on January 6, 1981.
By letter dated February 5, 1981, the respondent supplied copies of the prior leases to petitioner, who thereupon made his formal response by letter dated February 26, 1981. Petitioner objected to the levels of rent contained in a number of the prior leases, and, most notably, attacked the truthfulness of the rent claimed by the landlord to have been paid by the tenant immediately preceding the petitioner.
The respondent rendered its second opinion on March 5, 1981, holding that petitioner had indeed been overcharged unlawfully. Petitioner’s present disagreement with the respondent relates to the manner in which the respondent determined his lawful rent, as well as to respondent’s refusal to grant petitioner’s additional requests for treble damages, interest, attorney’s fees and costs, and expulsion of the landlord from the Rent Stabilization Association.
Petitioner instituted this article 78 proceeding on March 27, 1981, alleging facts seeking to establish arbitrary and capricious conduct on the part of the respondent. The *1006 proceeding originally came on before Justice George Bundy Smith of this court who, by decision dated October 20, 1981, denied relief without prejudice to restoration and remanded the matter to respondent to render an amended decision. Respondent was given 30 days after service of a copy of the order to render that decision.
The respondent rendered an amended decision on December 3,1981, and though without the 30-day limitation, this court denied petitioner’s motion to restore submitted on December 4, 1981, as moot, accepting respondent’s excuse and finding substantial compliance.
On January 8, 1982, petitioner submitted a motion to reargue his motion to restore, alleging that respondent’s amended decision was not only untimely, but was inadequate. By decision dated April 15,1982,1 held respondent’s amended decision inadequate and granted petitioner’s motion to restore. As stated earlier, disposition on the merits was held in abeyance pending receipt of respondent’s answer to the petition.
SUBSTANTIVE BACKGROUND
Beginning sometime in April of 1979, petitioner began speaking with the managing agent of the building within which he would eventually reside. Petitioner had become aware of the possibility of the availability of the subject apartment sometime in February, 1979 through a friend of his who then resided in the apartment. All communications between petitioner and the agent were by telephone or letter, as petitioner was then residing in Massachusetts. Petitioner hoped to be able to take possession of the apartment as of September 1, 1979.
On July 2, 1979, petitioner was finally notified that the apartment was available for a three-year lease term beginning July 1, 1979. Petitioner claims he requested a two-year lease; the landlord disputes this fact. In any event, petitioner was notified that those were the terms and he could “take it or leave it”. Petitioner took it, and he eventually received a copy of the lease in the mail for his signature on July 9 or 10. Petitioner successfully negotiated a change in the beginning date of the lease to July 15 (as he had not received the lease until so near that date and *1007 was still living in Massachusetts); the lease was to terminate on June 30, 1982. Petitioner’s rent was $450 per month.
Petitioner alleges, and this fact is controverted neither by the landlord nor by the respondent, that the apartment was uninhabitable until September 15, 1979, when petitioner took possession. Petitioner began the chain of events that culminated in the present article 78 proceeding when he filed his first complaint for rent overcharge on November 16, 1979.
THE PETITION
In this article 78 proceeding, petitioner seeks orders
(1) Directing the respondent to order forfeit the landlord’s status as a member in good standing of the Rent Stabilization Association and expelling the landlord’s membership therein with respect to the entire building located at 324 East 35th Street, New York, New York;
(2) Directing the respondent to determine in accordance with all applicable laws, rules, regulations and guidelines, the lawful rent on petitioner’s apartment;
(3) Directing the respondent to order the landlord to refund to petitioner treble the amount of any overcharge found, with interest;
(4) Directing the respondent to order the landlord to pay to petitioner petitioner’s expenses and attorney’s fees incurred in prosecuting his claim of unlawful rent overcharges, including, but not limited to, petitioner’s expenses and attorney’s fees incurred in the instant proceeding; and
(5) Granting petitioner such other and further relief as the court deems just and proper.
Each request is hereinafter dealt with, in turn.
A. Forfeiture of Rent Stabilization Association Status as a Member

in Good Standing and Expulsion from the Ranks of that Association.

Petitioner maintains that the respondent has abused its discretion and has acted arbitrarily and capriciously in failing to order the landlord forfeit its standing in the *1008 association and in failing to expel the landlord from the association with respect to the entire building. Petitioner maintains that this failure by the respondent violates the clear mandate of section 7 of the Code.
Section 7 provides, in substance, that a landlord-member shall forfeit its status, and its membership shall be terminated or suspended if it has either:
(a) Willfully overcharged rent; all overcharges are considered willful unless the landlord proves otherwise, or
(b) refused to comply with a CAB order within 10 days of the issuance of the order, or
(c) been found by the CAB to have harassed a tenant into vacating his/her apartment.
A clear reading of this statute indicates that upon violation of any one of the above-noted three subdivisions, the respondent CAB possesses discretion only in two areas: (1) the CAB may order forfeiture and expulsion with respect to an “entire building” or “any dwelling unit”, and (2) the CAB may either “terminate” or “suspend” such membership (Code, § 7). Bead in conjunction with section 8 of the Code, which provides for lesser sanctions when the violation is other than one listed in section 7, the CAB’s discretion on this issue clearly begins, and ends, with the above.
Cases on this issue are not on point but are instructive. In general, they address the issue of whether a CAB order directing forfeiture and expulsion is too severe under the circumstances of each case.
In Matter of Thwaites Place Assoc. v New York City Conciliation & Appeals Bd. (81 AD2d 804, 804-805), the court held that though under the particular facts of that case it would not have handed out as severe a penalty as forfeiture and expulsion, the sanction was statutorily valid and not “ 'shocking to one’s sense of fairness’ ”.
Similarly, in the recent case of Matter of Endeavor Prop. Holdings v Conciliation & Appeals Bd. of City of N. Y. (116 Misc 2d 541), the Supreme Court, New York County, held that the failure of a landlord to provide section 42 (subd A) riders in violation of a CAB order could justify a subsequent CAB order forfeiting the landlord’s status and expelling it from the association. The court noted (p 543), as did *1009 the Appellate Division in Matter ofThwaites (supra), that the Rent Stabilization Association is “self-policing” by design and plan of the real estate industry, and, as such, “requires owners to exercise a ‘high degree of good faith and diligence in fulfilling obligations under the law’ ”,
When this standard is violated, whatever sanctions are provided for and mandated by the Code of that association must be applied.
In the instant case there is no doubt that the landlord overcharged petitioner and the landlord has offered no evidence to rebut the presumption that the overcharge was willful. The respondent has even gone so far as to find, implicitly, that the landlord lied regarding the amount of rent paid by the tenants immediately preceding petitioner and in fact forged the prior tenants’ initials on the lease.
So stated, this court holds that the respondent has acted arbitrarily and capriciously in refusing to order the landlord’s status forfeit and to order the landlord either expelled or suspended from the association with respect to either petitioner’s apartment or the entire building. Respondent is directed to comply with the mandate of section 7 of the Code in a manner consistent with its proper discretion.
B. Petitioner’s Lawful Rent
The respondent determined petitioner’s lawful rent using the following analysis:
I II III
LEASE TERM AND RENT CHARGED LAWFUL RENT
RGBO[1] IN EFFECT AND PAID
Tenant: Lutz $ 350 $ 350
7/1/74 (Base date)
Tenant: Brennan $ 350 (9/1/75 to $ 315
8/31/76)
From: 9/1/75 $ 325 (9/1/76 $ 325
To: 8/31/77 to 8/31/77)
*1010 RGBO No. 7 12[1]/2% increase (7[1]/2% + 5% vacancy-allowance) (which is less than the maximum rent of $393.75 the owner could have charged)
Tenants: Higgins and $ 360 $ 360 Farber (which is less than From: 8/20/77 the maximum rent To: 8/31/79 of $368.88 the owner RGBO No. 9 (13 V2) V2% increase (8[1]/2% + 5% vacancy allowance) could have charged)
Tenant: Chessin From: 7/15/79 To: 6/30/82 RGBO No. 11 20% increase (15% + 5% vacancy allowance) $ 450 $ 432
From: 7/15/80 To: 6/30/82 RGBO No. 11a[2] Increase of $8 per month[3] $ 458 $ 440.66
Petitioner’s objection to the respondent’s determination is threefold:
(1) The base rent apartment was furnished; the apartment was thereafter rented as unfurnished, therefore the landlord failed to maintain required services pursuant to subdivision (m) of section 2 of the Code and section YY516.0.3 of the city Rent Stabilization Law of 1969 (Administrative Code of City of New York, ch 51, tit YY), and rents subsequent to the base rent must be adjusted downward;
*1011 (2) Petitioner’s lease, as one for a period of more than two years but less than three years, should have entitled petitioner to a percentage renewal increase applicable to two-year leases rather than one applicable to three-year leases; and
(3) The $8 surcharge was incorrectly figured in as part of the lawful rent because petitioner never in fact was charged nor paid that surcharge and, in any event, the proper guidelines for upward adjustment of the rent during the term of the lease were not followed.
(1) The Base Rent Determination
Section YY51-6.0.3 of the Rent Stabilization Law provides, in pertinent part: “In order to collect a rent adjustment authorized pursuant to * * * subdivision d of section YY51-5.0 an owner must file * * * certification that he is maintaining and will continue to maintain [furnishings provided] on the [base] date”.
Subdivision (m) of section 2 of the Code provides the following as a definition of the term “ ‘[Required services’ ”: “That space and those services which were furnished or were required to be furnished * * * [as of the base date] * * * [including] repairs, decorating and maintenance”. It is accepted that the provision of “furnishings” is within the definition of the above. (Matter of McNair v Berman, 54 Misc 2d 389.)
If any further statutory authority is needed, petitioner offers subdivision A of section 62 of the Code, which provides that requirements of the Code “shall not be evaded, either directly or indirectly * * * by modification of the services furnished or required to be furnished with the dwelling units”.
Petitioner maintains that because his apartment was furnished on the base date, and this court accepts the handwritten notation on that lease as sufficient evidence that it was, no countervailing evidence appearing, the landlord had the subsequent obligation either to maintain the apartment as furnished or to adjust the base rent downward to reflect the loss in services.
This argument is creatively and commonsensibly tempting, but a closer analysis reveals its illusory foundations.
*1012 When an apartment becomes decontrolled, as this apartment did on June 30, 1974, the landlord is free to rent the apartment for whatever amount a tenant will agree to, unless the tenant is successful on what is commonly referred to as a “Fair Market Rent Appeal”. (Rent Stabilization Law, § YY51-6.0.1, subd b, par [1]; § YY51-6.0.2, subd b, par [1].)
In the present case, the landlord, free to command any rent the market could bear, was not seeking an upward rent adjustment during the term of a lease, nor was he seeking to collect more than the lawful rent on a vacancy or renewal lease because of an alleged provision of additional services.
Section YY51-6.0.3 specifically provides for rent adjustments “pursuant to * * * subdivision d of section YY515.0”. It is this court’s opinion that section YY51-5.0 applies to the establishment of rent guidelines with respect to apartments that are already rent stabilized. The Legislature has provided for an “application for adjustment of the initial * * * rent” under section YY51-6.0.2 (subd b, par [1]; emphasis added) — giving a tenant the right to so apply only if his or her rent exceeds the fair market rent. At no point does the statute mention consideration of services furnished prior to the base date or on the base date, as it clearly could have given the language available in section YY51-6.0.3. Section YY51-6.0.2 even goes on to state that no tenant whose rent is no greater than the amount charged and authorized by the Rent Control Board under the preceding lease may avail him or herself of the benefits of that section. This is such a case; the base rent was $350, and the immediately preceding rent-controlled tenants paid $350.
Even if this court were to allow such a strained interpretation of the rent adjustment statute, and to hold that the statute does apply, the relief requested by the petitioner could not be granted.
Section YY51-6.0.3 provides for the required services either to be continued, or for the rent to be rolled back to the level of rent charged and paid prior to the provision of the services. Case law also supports this reading of the *1013 statute (Matter of McNair v Berman, 54 Misc 2d 389, supra). The rent charged before the base rent, and apparently before the apartment was furnished, was the same as the base rent. Only if the apartment had always been furnished would the court need to invent an amount deductible as the cost for the services and use that amount to downwardly adjust the base rent.
So stated, petitioner’s request for a downward adjustment of the base rent is denied. The respondent has acted neither arbitrarily, capriciously nor contrary to the law.
(2) Two-Year v Three-Year Lease Determination
Subdivision B of section 23 of the Code provides that the length of the term of a vacancy lease shall be by agreement of the landlord and the tenant. To anyone who is familiar with the present housing situation in New York City, this statutory standard of “agreement” must appear, at the very least, comical. “Agreement” in this situation generally involves the tenant “agreeing” to accept the term offered or “agreeing” to look elsewhere for an apartment.
In the present case, petitioner maintains that he requested a two-year lease but was told he must accept a three-year lease. The landlord denied this fact.
In any event, a credibility analysis would only have been necessary if the lease had in fact been for a period of three years. As it is, petitioner’s lease runs for less than three years but more than two years. The fact that it was petitioner who requested the change from July 1 to July 15 is irrelevant. It is understandable that the petitioner did not desire to pay rent for an apartment prior even to his knowledge of its availability to him, and as petitioner correctly notes, the landlord was free to negotiate a later termination date to make the term a complete three years. As it stands, the lease is “a vacancy lease for more than 2 years and less than three”, and according to Rent Guidelines Board Order No. 11, the rental percentage increase applicable to two-year leases must be applied.
So stated, this court holds that the respondent acted arbitrarily and in contravention of one of its own orders, and directs the respondent to use the rental percentage *1014 increase applicable to two-year leases in determining petitioner’s lawful rent.
(3) The $8 Surcharge
As indicated earlier in this opinion, the respondent allowed an $8 surcharge to be figured in as part of the lawful rent chargeable to petitioner. Contrary to what the category heading indicates with respect to inclusion of the $8 surcharge, petitioner denies and respondent concedes that the landlord never charged and petitioner never paid the $8 as part of the rent. The respondent’s reason for including the surcharge in its determination is that had the landlord applied for the adjustment it would have been granted, therefore it must be included as part of the lawful rent.
In the amended second decision, respondent states, with respect to this argument, that petitioner cannot now allege an incorrect rent adjustment, but must first file a section “62B” complaint. This is a rather odd decision given the fact that petitioner was not even aware of the rent adjustment until respondent’s original decision. (This court doubts that petitioner could even file a “62B” complaint because that amount has never actually been collected from him as rent.)
Subdivision A of section 62 of the Code, from which the “62B” complaint was gleaned, provides in pertinent part: “The [stabilized] rents * * * shall not be evaded, either directly or indirectly * * * by requiring the tenant to pay * * * fees * * * or other charges”.
In this vein, subdivision B of section 42 of the Code allows for a landlord and tenant to agree in their lease that the tenant will agree to accept and pay any rent adjustment applied for and granted to the landlord, during the term of the lease. These lease provisions are generally referred to as “42(b) riders”. Petitioner’s lease carries a “42(b) rider”.
The obvious problem in the present case is that there has neither been an application by the landlord for an increase nor has there been a determination by the respondent that the increase is allowable — beyond the “summary” inclusion of the fuel adjustment figure in the respondent’s original decision.
*1015 In allowing this surcharge, without proper application and determination, the respondent is holding that as a matter of law the landlord is entitled to it. Surely, there must be some set of facts that, if proven, would contradict this finding. This possibility is clearly indicated by the respondent’s recent implementation of procedures for the processing of “62B” complaints, as well as the fact that the landlord must first certify that it is maintaining required services. (Rent Stabilization Law, § YY51-6.0.3.)
So stated, this court finds that respondent has acted arbitrarily and capriciously, and contrary to the law, in including the surcharge as part of petitioner’s lawful rent, and directs respondent to determine petitioner’s lawful rent without this inclusion.
C. Treble Damages and Interest
Petitioner bases his claim for treble damages and interest on section YY51-11.0 (subd c, par [3]; subd d, par [2]) of the New York City Rent and Rehabilitation Law (Administrative Code, ch Y, tit 51). Those sections of the Rent and Rehabilitation Law provide for an award of treble damages and interest in the event that a landlord fails to abide by the rent guidelines provided under that statute.
Petitioner argues that these provisions of the Rent and Rehabilitation Law should be applied in the present case for two reasons: (1) the respondent, by virtue of subdivision b of section 12 of the Emergency Tenant Protection Act of 1974 (ETPA; L 1974, ch 576, § 4), has the power to conform relief available under the Rent Stabilization Law to that already available under the Rent and Rehabilitation Law, and (2) because the landlord has violated section 7 of the Code, and the petitioner’s apartment must revert to rent control, whatever relief is available under the Rent and Rehabilitation Law must now be granted by the respondent.
This court rejects petitioner’s argument that whatever relief is available under the Rent and Rehabilitation Law is available under the Rent Stabilization Law. As respondent correctly notes, the Rent Stabilization Law specifically and particularly fails to provide for the availability of treble damages and interest, even though it *1016 clearly provided for. them in the Rent and Rehabilitation Law and subdivision a of section 12 of the ETPA. The ETPA section specifically failed to include New York City (as a city having a population of more than one million) in its coverage. (ETPA, § 12, subd b.)
With respect to petitioner’s second argument, regarding the reversion of petitioner’s apartment to rent control, this court similarly rejects it. The landlord has violated the Rent Stabilization Law, not the Rent and Rehabilitation Law, and for whatever reason, the Legislature has seen fit to provide different sanctions and remedies for these offenses.
So stated, this court holds that respondent did not act arbitrarily, capriciously or contrary to the law in denying petitioner’s request for treble damages and interest.
attorney’s fees and costs
In this last request, petitioner seeks to compel respondent to direct an award of attorney’s fees and/or costs against the landlord for petitioner’s costs incurred as a result of this article 78 proceeding, as well as for the preparation of his complaint for a rent overcharge before the respondent.
Generally speaking, an award of attorney’s fees and/or costs may only be made by a court, or an entity performing quasi-judicial functions, where there exists either an express contractual obligation or specific statutory authority. (Matter of Green [Potter], 51 NY2d 627.)
Not even the petitioner would argue that specific statutory authority exists under the Rent Stabilization Law or Code for the respondent to make an award of attorney’s fees. Petitioner does make an attempt to duplicate his argument from the previous section regarding treble damages, and seeks to finagle coverage under the Rent and Rehabilitation Law, which does provide for such an award, but this court again rejects that argument.
This court does, nonetheless, provide petitioner with the relief he requests, by reference to petitioner’s lease (Real Property Law, § 234), and the specific grant of powers given to the respondent pursuant to chapter 576 (§ 6, subd e, par [10]) of the Laws of 1974.
*1017 Section 234 of the Real Property Law provides that whenever a lease contains a clause whereby a landlord may recover attorney’s fees and/or expenses upon the successful prosecution of a summary proceeding or other action, and where those attorney’s fees/expenses are incurred as a result of the tenant’s failure to perform any covenant or agreement contained in the lease, the law will imply an identical obligation in favor of the tenant.
Petitioner’s lease contains such a clause, and if petitioner failed to pay his rent, or failed to do anything else required by his lease, the landlord would be entitled to an award of attorney’s fees and/or expenses from the court that provided relief. Therefore, this court notes the language “summary proceeding or other action”, and the intent of section 234, and holds that petitioner is entitled to an award of attorney’s fees and/or expenses incurred by him in this prosecution, resulting from the landlord’s violation of a covenant of the lease, namely, the covenant to abide by the rent guidelines established by law.
While the above establishes petitioner’s entitlement to the fees and/or expenses, it does not establish whether respondent actually had or has the power to make the award. I find that by virtue of chapter 576 (§ 6, subd e, par [10]) of the Laws of 1974, granting the respondent any other power necessary to effectuate the provisions and purposes of the Code, such power does exist. This holding is additionally supported by the obvious ease with which respondent has allowed landlords to collect as additional rent attorney’s fees and/or expenses incurred in the successful prosecution of summary proceedings — all in the name of section 234 of the Real Property Law (CAB Opns Nos. 7997, 19721, 19899).
So stated, this court holds that the respondent acted arbitrarily and in contravention of the law and its own opinions in refusing to award attorney’s fees and/or expenses to the petitioner. Respondent is directed to make an award to cover petitioner’s pecuniary losses and any diversion of his time, as it would for any lay tenant; respondent is not directed to provide petitioner with “attorney’s fees”, as such. (Parker 72nd Assoc. v Isaacs, 109 Misc 2d 57 [Lebedeff, J.].) The filing of a complaint for a rent over *1018 charge is easily accomplished by most lay persons, and an award of attorney’s fees will rarely be appropriate. Respondent is to be guided by a consideration of to what extent petitioner’s losses were caused by the willful overcharge of the landlord in determining the amount to be allowed for the prosecution of this article 78 proceeding.

. Rent Guideline Board Order.

. The tenant’s lease contains a section 42 (subd B) clause permitting an adjustment to the rent during the term thereof.

. This is a fuel adjustment surcharge which is added on the rent but does not become part of the base rent for computing future increases.