OPINION OF THE COURT
Sheldon S. Levy, J.
By this CPLR article 78 proceeding, petitioners seek annulment of Rent Guideline Order No. 14, adopted June. 25,1982, by respondent City of New York Rent Guidelines Board. The petitioners are owners of buildings subject to the Rent Stabilization Law of 1969 (Administrative Code of City of New York, ch 51, tit YY) and affected by subject order.
*838 The instant suit was initiated because the June 25 meeting, which was open to the public by law (Public Officers Law, § 98, subd [a]), became, according to petitioners, a “shambles” where a “circus atmosphere prevailed” as the result of a “large and unruly group of spectators” whose vocal presence deprived the “meeting of the calm, deliberative atmosphere” required for “reasoned decision making”. Petitioners further allege that the board improperly considered, as a factor in its decision, the tenants’ ability to pay and improperly failed to consider the landlords’ mortgage financing expenses, operating costs, vacancy allowances and maintenance costs, thus effectively taking petitioners’ property without benefit of due process.
In support of this application, affidavits are submitted by the two real estate industry representatives on the board wherein they claim that the “unruly crowd of raucous demonstrators stampeded the Board”. Petitioners’ assertion that there were approximately 500 demonstrators in the meeting place is seriously undermined, however, by the four media accounts annexed to their reply affidavit. Three of those reports estimated the audience at about 250, while the other fixed the number at 200. The accounts noted that the 20 police officers in attendance only occasionally ejected a protestor and then only because he was particularly disruptive. One report noted that these demonstrations were “commonplace at the Board’s meetings” and that, unlike the previous year, no demonstrators were arrested.
In opposition to the petition, affidavits from the other seven members of the nine-member board are included. These papers make it abundantly clear that, while no board member was unaware of the active audience, both consideration of the issues and ultimate votes were deliberate and complete.
Certainly, there was no intimidation. The board was in a uniquely advantageous position to determine if it or its function was being threatened. In point of fact, when the noise was too great initially to convene the meeting, the chairperson called a recess. No further recesses, however, had to be called thereafter.
*839 At the meeting itself, one of the factors that the board chose to consider was the tenants’ ability to pay. This was entirely proper and consistent with the statutory authorization embodied in section YY51-5.0 (subd b, par [3]) of the Administrative Code.
In addition, the basic guideline increases of 4%, 7% and 10%, on one-, two- and three-year leases, were approved as a compromise measure after full discussion and after several other proposals had been discarded.
Similarly, there is ample evidence to conclude that the board decided not to include in the order the various landlord expenses cited in petitioners’ papers.
The board members discussed, at considerable length, the question of vacancy increases. A number of board members were in favor of granting a vacancy allowance. However, after various proposals were rejected, five out of the nine members finally agreed upon a compromise plan which called for guideline increases without a vacancy allowance. There is no evidence that board members were led to believe that vacancy increases would be considered later in the meeting, as an addition to the guidelines increases, or that the vote was otherwise improperly taken.
Moreover, the board debated the question of whether or not to allow for rent augmentations based upon increased mortgage financing costs. One specific proposal, which called for determination of such costs (and corresponding rent increases) on a case-by-case basis, was rejected. The board then voted to defer consideration of mortgage financing costs until after further study.
Finally, it also appears that the board’s deliberations were not confined to the June 25 meeting. Documents, graphs, tables and staff reports, which could have a bearing on the board’s ultimate decision, had, for several weeks previous, been submitted to the board and were available to its members.
Accordingly, it is apparent that petitioners are seeking to invalidate the will of the majority of the board upon a mere pretext, and that even two members of the board, who had originally voted with petitioners in contesting the order in question, now oppose petitioners’ efforts to achieve *840 in a judicial forum that which they were unable to win on June 25.
A vocal citizenry, exercising its constitutionally protected rights of assembly and free speech at a statutorily open meeting, cannot serve as a base upon which to set aside a duly constituted board’s publicly pronounced determination, which clearly was neither arbitrary, capricious, unreasonable nor contrary to law. Indeed, the decision was amply supported by abundant evidentiary and testimonial material before the board.
For all of the reasons stated, the application is, in all respects, denied, and the petition is dismissed.