In the Matter of Paul Chessin, Respondent-Appellant, v New York City Conciliation and Appeals Board, Appellant-Respondent.

First Department, March 29, 1984

298

**APPEARANCES OF COUNSEL**

*Iris J. Korman* of counsel (*Ellis S. Franke,* attorney), for appellant-respondent.

*Mark Scherzer* (*Paul Chessin* with him on the brief), for respondent-appellant.

**OPINION OF THE COURT**

FEIN, J.

Petitioner, as tenant, and Green Mountain Ventures, as landlord, entered into a written lease dated July 5, 1979, for apartment 2B, premises 324 East 35th Street, Manhattan, at a rental of $450 per month, for the period July 15, 1979 through June 30, 1982. It is alleged, and uncontroverted by the landlord, that the apartment was uninhabitable until September 15 of that year, when petitioner took possession.

Two months later, in November, 1979, petitioner filed a complaint with the Rent Stabilization Association, alleging a suspected rent overcharge. Petitioner had requested a rental history for the apartment from the landlord, as authorized under subdivision A of section 42 of the Code of the Rent Stabilization Association of New York City, Inc. (Rent Stabilization Code), but the landlord had ignored this request. When the Association requested copies of prior leases for this apartment, this too was ignored. In May, 1980, petitioner filed a complaint with respondent Conciliation and Appeals Board (CAB). CAB directed the landlord to furnish pertinent data within 10 days, upon pain of expulsion from the Rent Stabilization Association at least with regard to the apartment in question. When the landlord finally provided copies of leases and relevant documents in an untimely fashion, CAB accepted them, and the landlord's excuse for the delay, as substantial compliance.

CAB determined that petitioner had been unlawfully overcharged, due in large measure to the landlord's inaccurate statement of the rent paid by petitioner's immediate predecessor. CAB fixed the monthly rent at $432 per month for the period up to July 14, 1980 and at $440 per

month for the balance of the term, by adding a fuel surcharge of $8 per month commencing as of July 15, 1980, even though the landlord had not previously imposed such surcharge. The CAB directed the landlord to extend the lease to July 14, 1982 to provide tenant with a full three-year term as originally negotiated.

In this CPLR article 78 proceeding, instituted by petitioner, the CAB appeals from the judgment entered in the Supreme Court, New York County (Richard Lee Price, J.), on October 25, 1982 partially granting tenant's petition. The appeal is from so much of the judgment as remands the proceeding to the CAB and (1) directs the CAB either to expel or to suspend the landlord from the Rent Stabilization Association with respect to either tenant's apartment or the entire building; (2) directs the CAB to determine petitioner's lawful rent by calculating the disputed lease term as a two-year renewal lease; (3) disallows the fuel surcharge to tenant's rent; and (4) awards tenant costs to cover pecuniary loss and diversion of time, to be determined by the CAB.

Section 7 of the Rent Stabilization Code provides for suspension or termination of membership in the Rent Stabilization Association with respect to either the entire building or one or more dwelling units within that building, where the CAB determines that a landlord has exceeded the lawful level of fair rent increases or has refused to abide by an order of the CAB in a timely fashion. Respondent determined not to expel this landlord from the Rent Stabilization Association. Special Term disagreed (116 Misc 2d 1003) and ordered expulsion or suspension, citing the landlord's failure to provide the data requested under subdivision A of section 42 of the code. The court concluded that the landlord had not borne its burden of proving that the overcharge had not been willful, noting that indeed there was evidence that the landlord had lied and possibly altered the prior lease to reflect an inflated rent paid by petitioner's predecessor.

The sanction of expulsion from the Rent Stabilization Association, however drastic, has been upheld by this court (*Matter of Phelps Mgt. Co. v Gliedman*, 86 AD2d 540) as "well within the bounds of administrative discretion"

(*Matter of Oriental Blvd. Co. v New York City Conciliation & Appeals Bd.,* 92 AD2d 470, affd 60 NY2d 633), in furtherance of what is essentially a voluntary, self-policing system of rent regulation (*Matter of Thwaites Place Assoc. v New York City Conciliation & Appeals Bd.,* 81 AD2d 804, affd 54 NY2d 798). As these and other cases hold, whether to exercise the drastic power of expulsion granted to the Board by the applicable statute and code is well within the bounds of administrative discretion of the Board, the administrative agency charged under law with that oversight responsibility. The determination of the Board will not be interfered with so long as it has a rational basis. An administrative agency's application of its regulations, and its interpretation and construction of the statute under which it functions, are entitled to the greatest weight (*Hotel Armstrong v Temporary State Housing Rent Comm.,* 11 AD2d 395, 402; see *Matter of Johnson v Joy,* 65 AD2d 701, affd 48 NY2d 689).

■ On this record there was a rational basis for the determination not to direct expulsion. The decision was not rendered in an arbitrary or capricious manner (*Matter of Colton v Berman,* 21 NY2d 322, 329). Just as courts should not intervene where the measure of punishment or discipline imposed by an administrative agency is more drastic than the court might, in the first instance, have imposed (*Matter of Thwaites Place Assoc. v New York City Conciliation & Appeals Bd., supra; Matter of Pell v Board of Educ.,* 34 NY2d 222, 233), so, too, the court should not direct the imposition of a more drastic sanction than that imposed by the agency. Although there is some question as to the landlord's forthrightness in providing accurate background rental data, the landlord's excuse for delay in complying with subdivision A of section 42 was accepted by the Board. Such determination had a rational basis notwithstanding Special Term's view that respondent had "implicitly" found the landlord had lied.

The cited cases set forth the well-settled rule that where there is a rational basis in the evidence for the imposition of sanctions by an administrative agency and the agency does not act in an arbitrary and capricious manner, the court will not interfere with the agency's exercise of discre-

tion by reducing a sanction because it is deemed too severe. The same principle should apply where it is sought to increase the penalty.

The determination by Special Term directing suspension or expulsion of the landlord from the Rent Stabilization Association in effect converted the petition to one in the nature of mandamus to force the agency, which had already performed its statutorily mandated review, to impose a sanction it had declined to impose. Mandamus will not lie to review an administrative determination of a discretionary or judgmental nature. CPLR article 78 is not designed to provide a vehicle for the substitution of the court's discretion for that of the administrative agency. "The courts can require, but cannot control, the exercise of judgment or discretion. Where a subordinate body or officer is vested with power to determine a question of fact, the duty is judicial, and though it can be compelled by mandamus to determine the fact, it cannot be directed to decide it in a particular way, however clear it may be made to appear what the decision ought to be." (23 Carmody-Wait 2d, NY Prac, § 145:117, p 609.)

Respondent's power to impose the sanction of suspension or expulsion is to insure that lawful rents are being charged, not to expel violators where the Board determines that the overcharges are minimal and not willful. Special Term erred in directing the CAB to suspend or expel landlord from the Rent Stabilization Association.

■ Special Term also erred in modifying respondent's determination of the lawful rent for the apartment. Respondent fixed the monthly rent at $432 for the first year, and at $440 thereafter, including the $8 per month fuel surcharge. The rent reserved in the lease was $450. The minimal nature of the overcharge is further reason to reject Special Term's conclusion that respondent lacked the discretionary authority to withhold the ultimate sanction of suspension or expulsion from the Rent Stabilization Association.

■ Special Term properly rejected petitioner's contention that there was a diminution of services warranting a further rent reduction because the apartment had been "furnished" on the base rent date (July 1, 1974) and the

landlord thereafter failed to maintain the apartment in that condition. Neither the statute (Administrative Code of City of New York, § YY51-6.0.3) nor subdivision B of section 62 of the Rent Stabilization Code refers to the establishment of a value for furnishings in an apartment. Special Term noted that the apartment had been rented unfurnished, prior to the base rent date, at the same rate as established for the apartment as furnished on July 1, 1974, and thus there was no requirement for a rollback of rent when the apartment was subsequently rented as unfurnished (see *Matter of McNair v Berman,* 54 Misc 2d 389).

■ CAB calculated the lawful rent on the basis of a three-year lease, under Rent Guidelines Board Order No. 11, applicable to leases commencing July 1, 1979 through June 30, 1980, which provided for a 5% vacancy allowance for commencement by a new tenant, plus a maximum 15% rent increase for a three-year term or 12% for a two-year term. There plainly was a dispute as to whether the parties had agreed to a three-year or a two-year term. Special Term disagreed with respondent and ruled that petitioner was entitled to a lease at the two-year (12%) renewal rate, even though the actual term of the lease was 2 years, 11 months and 15 days. That petitioner had requested that the starting date of the lease be moved up from July 1 to July 15, 1979 was deemed "irrelevant" by the court.

Rent Guidelines Board Order No. 11 provides that for previously vacant apartments (as opposed to renewals) a lease for a period of from two to three years shall be deemed a two-year lease for purposes of rent increase. CAB found, as a matter of fact, that the initial intention of the parties was to enter into a three-year lease, at a stated rent which supposedly conformed to the guidelines for such a term. The evidence strongly supports the CAB determination. The subsequent modification of the commencement date, which Special Term conceded was at petitioner's behest, was merely an accommodation for petitioner. There is no evidence that the amendment to the lease to delay the commencement date by 15 days demonstrated an intention by the parties to roll back the rent to the rate for two-year leases. Special Term's order to this effect amounts to an

unwarranted interference with CAB's exercise of discretion and provides a windfall for tenant (see *Matter of Lewin v New York City Conciliation & Appeals Bd.*, 88 AD2d 516, affd 57 NY2d 760).

Respondent had the authority under subdivision A of section 35 of the Rent Stabilization Code to deem this a three-year lease, under the circumstances, notwithstanding the stated commencement date in the amended lease. That section of the code permits CAB to "take into consideration all factors bearing upon the equities involved" in adjusting stabilization rents to conform to legal standards. The Rent Guidelines Board Order was not intended to remove respondent's discretion in determining the intention of the parties, and to replace it with an inflexible standard.

■ Special Term ruled that CAB acted arbitrarily, capriciously and contrary to law in including the $8 fuel surcharge in the over-all rent, because the landlord, never having applied for or levied this surcharge, failed to establish entitlement to it. The court thus implicitly recognized that if the landlord had certified that certain fuel services were being maintained as required, it would have been entitled to this adjustment. However, no independent application by the landlord for permission to impose such surcharge is required by law or regulation. The fuel adjustment surcharge was authorized under Rent Guidelines Board Order No. 11a. The only prerequisite in that order to imposition of the surcharge was that it would be applicable only under leases specifically permitting adjustment of the rent pursuant to future Rent Guidelines Board determinations during the term of the lease. The rider to the subject lease contains such a clause. Accordingly, it was not improper for respondent to take the fuel surcharge into consideration in determining the true and lawful rent for this apartment.

■ Special Term properly ruled that tenant was not entitled to treble damages under section Y51-11.0 (subd d, par [2]) of the Administrative Code or to interest, under section Y51-11.0 (subd c, par [3]), which relate to the New York City Rent and Rehabilitation Law (the "Rent Control Law", Administrative Code, tit Y, § Y51-1.0 *et seq.*), rather

than the Rent Stabilization Law (Administrative Code, tit YY, § YY51-1.0 *et seq.*). The latter does not provide for treble damages and interest even though they are available under section 12 of the Emergency Tenant Protection Act of 1974 (ETPA; L 1974, ch 576, § 4 [§ 12]). Subdivision b of section 12 of the ETPA clearly leaves it up to CAB as a matter of discretion, whether and how to enforce the provisions of that law in accordance with the Rent Stabilization Law. There is no merit to tenant's contention that inasmuch as the landlord has violated section 7 of the Rent Stabilization Code, the apartment should revert to rent-controlled status, thus bringing into play the relief under the Rent and Rehabilitation Law.

The Rent Stabilization Law (and its code) serves a different purpose from the Rent and Rehabilitation Law (and its rent and eviction regulations). These are separate and distinct systems which the Legislature has seen fit to create in treating separate and distinct problems. The remedial procedures available under one system provide no basis for challenge to the procedures available under the other (*8200 Realty Corp. v Lindsay*, 27 NY2d 124; *Matter of Walter & Samuels v New York City Conciliation & Appeals Bd.*, 63 AD2d 626, app withdrawn 47 NY2d 761). The issue here involved a rent-stabilized apartment and concerned a violation of the Rent Stabilization Law, not the Rent and Rehabilitation Law.

■ Special Term properly denied attorney's fees and costs to tenant. These are items which a court or a quasi-judicial agency may award, only under express contractual obligation or specific statutory authority. There is no such statutory authority under the Rent Stabilization Law.

Special Term did find statutory authority to impose costs to cover so-called "pecuniary loss and diversion of time" as follows:

(1) Section 234 of the Real Property Law turns the tables on a landlord, providing that where a lease calls for a tenant to reimburse the landlord for legal fees and expenses incurred in any successful "action or summary proceeding", then the law will imply an identical obligation in the tenant's favor in pursuing or defending "any action or summary proceeding" where the tenant emerges victorious.

(2) Petitioner's lease contains such a standard clause.

(3) The entitlement having thus been established, respondent has the authority, under section 8 of the Rent Stabilization Code, to impose any "discipline, fine or sanction" necessary to effectuate the purposes of the code or the Rent Stabilization Law, and thus can and should have awarded attorney's fees and costs to cover "pecuniary loss and diversion of time."

Special Term's initial premise was incorrect. Section 234 of the Real Property Law is inapposite because there was neither an "action" nor a "summary proceeding" involved here. An administrative proceeding is not an "action" (*Matter of Fiedelman v New York State Dept. of Health*, 58 NY2d 80).

Accordingly, the judgment of Supreme Court, New York County (Richard Lee Price, J.), entered October 25, 1982, insofar as it granted on renewal of an earlier motion certain relief to petitioner to the extent of directing the termination or suspension of the landlord's status in good standing in the Rent Stabilization Association, determining that the lease in question was for a term qualifying for a rent increase limited to the rate for a two-year term, denying the landlord the $8 per month fuel surcharge, and directing CAB to award tenants costs to cover pecuniary loss and diversion of time involved by the administrative proceeding, should be reversed on the law, without costs, the petition dismissed, and the determination of respondent Conciliation and Appeals Board reinstated.

CARRO, J. P., BLOOM, MILONAS and ALEXANDER, JJ., concur.

Judgment, Supreme Court, New York County, entered on October 25, 1982, unanimously reversed, on the law, without costs and without disbursements, the judgment vacated, the petition dismissed, and the determination of appellant-respondent reinstated.