OPINION OF THE COURT
Emily Jane Goodman, J.
Motion sequence Nos. 001 and 002 are hereby consolidated for disposition.
Motion sequence No. 001 is a special proceeding, brought pursuant to CPLR article 78, to annul and vacate a portion of the “2008 Apartment and Loft Law Order No. 40” (order No. 40) promulgated by the respondent New York City Rent Guidelines Board (RGB). Order No. 40 sets guidelines for rent increases on rent-stabilized apartments in New York City commencing October 1, 2008. In motion sequence No. 002, the New York City Council seeks leave to file a memorandum of law as amicus curiae in further support of the petition.
*342 This proceeding presents an interesting issue: whether the RGB may enact a minimum dollar increase for long-term tenants — when the City Council, as the lawmaking body which enacted the New York City Rent Stabilization Law (RSL), which created the RGB, maintains that the RGB has overstepped its authority and acted ultra vires.
Background
Order No. 40 provides, inter alia, for maximum rent increases for leases subject to renewal on or after October 1, 2008 and on or before September 30, 2009 as follows: 4.5% for one-year leases and 8.5% for two-year leases for apartments where heat is provided, and 4% for one-year leases and 8% for two-year leases where heat is not provided. Order No. 40 further provides for a minimum dollar increase applicable to apartments where the most recent vacancy lease was executed six years or more prior to the date of the renewal lease subject to order No. 40 (minimum dollar increase). These tenants are also to pay increases of 4.5% or $45, whichever is greater, or 8.5% or $85, whichever is greater, for one-year and two-year lease renewals for apartments where heat is provided. Where heat is not provided, the increases are 4% or $40, whichever is greater, for one-year leases, and the greater of 8% or $80 for two-year leases. Petitioners do not challenge that portion of order No. 40 allowing for differentials based on whether the building owner provides heat.
The minimum dollar increase only affects tenants paying less than $1,000 a month in rent. Hence, petitioner Mercedes Casado, who commenced her tenancy in 1992 and was paying $739.31 a month in rent at the time the petition was filed, is subject to an $85 or an 11.5% rent increase on January 1, 2009. Petitioner Paul Hertgen was paying $685 a month for his Staten Island apartment and, as of October 1, 2008, his rent will be increased to $770, which is a 12% increase. Thus, the effective percentage increase for long-term tenants is nearly double the increases for short-term tenants; in other words, order No. 40 penalizes tenants failing to move in a city that has virtually no affordable housing.[2]
Petitioners maintain that the RGB is prohibited from creating “classes of housing accommodations” subject to different *343 guideline adjustments, because the power to make such classes lies exclusively with the City Council, which has not created classes of accommodations for long-term versus short-term tenancies. As the City Council argues in its amicus brief,[3] the RGB overstepped its authority under the RSL and Emergency Tenant Protection Act of 1974 (ETPA) (L 1974, ch 576, § 4, as amended [McKinney’s Uncons Laws of NY § 8621 et seq.J), because those statutes only authorize the RGB to issue rent orders for “classes of housing accommodations” previously identified by the City Council as housing accommodations for which a housing shortage exists. Since the City Council has declared a housing emergency for “all” classes of accommodations within New York City, and the only units of housing identified by the City Council for separate treatment are long-term rental units in hotels, the City Council argues that the RGB may not identify another class of properties and set a separate rate increase for that class. This is especially true, the Council argues, given that when it adopted the RSL, it emphasized that long-standing tenants must be protected, and that policy is acknowledged by the RGB on its Web site. While the City Council acknowledges that under the Local Emergency Housing Rent Control Act (as added by L 1962, ch 21, § 1, as amended by L 2003, ch 82), the State Legislature restricted the Council’s authority over the future creation of “classes of housing accommodations,” the City Council points out that there would be no need to restrict the Council, if the power was not originally vested within it, as opposed to the RGB.
Petitioners also argue that the RGB’s adoption of the minimum dollar increase is in conflict with both section 26-516 (a) (2) of the RSL (Administrative Code of City of NY) and section 2526.1 (a) (2) (ii) of the Rent Stabilization Code (RSC) (9 NYCRR). Petitioners argue that this local law and regulation preclude an examination of an apartment’s rental history more than four years in the past when the New York State Division of Housing and Community Renewal (DHCR) or the courts seek to determine the lawful rent for a rent-stabilized apartment. Further, petitioners contend that the RGB failed to file adequate findings to support its adoption of the minimum dollar increase in violation of RSL § 26-510 (b), which requires the RGB to consider factors such as the economic conditions of the real estate industry and data on the current and projected cost of *344 living for the affected area, and thus, that order No. 40 is arbitrary and capricious and an abuse of discretion.
Both petitioners and the City Council rely also on Matter of New York State Tenants & Neighbors Coalition, Inc. v Nassau County Rent Guidelines Bd. (53 AD3d 550 [2d Dept 2008]). There, the Appellate Division, Second Department, ruled that the Nassau County Rent Guidelines Board did not have the authority to create a separate rate adjustment guideline based on tenant income, because that constituted creation of a “separate class of accommodation” (at 552) which could only be created by the local legislature.
In opposition to the petition, the RGB contends that this proceeding is barred by laches, because order No. 40 was adopted on June 19, 2008, and petitioners waited until September 15, 2008 — two weeks before the new guidelines went into effect on October 1, 2008 — to file this petition. On the merits, the RGB contends that based on 2003 amendments to the ETPA, the City Council is specifically precluded from adopting laws with respect to the classification of housing accommodations, and may only remove a housing accommodation from rent regulation. Accordingly, it reasons that it has the statutory authority to make classes of accommodations, which comply with RSL § 26-510 (b). However, as a result of the decision in Matter of New York State Tenants & Neighbors Coalition, Inc. v Nassau County Rent Guidelines Bd., the RGB concedes that it may not create classes of accommodations based on factors, such as the income of the tenants, that are not sufficiently connected to the housing accommodations themselves. The RGB argues that it has not created such an impermissible class of accommodation, as the challenged increase is not based on indicia regarding the tenants, but rather, indicia regarding the housing accommodations themselves. The RGB also relies upon Stein v Rent Guidelines Bd. for City of N.Y. (127 AD2d 189 [1st Dept 1987] [two-tier vacancy increase allowance permitted under law]).
The RGB maintains further that, the four-year statute of limitations for determining rent overcharge complaints, set forth in RSL § 26-516 (a) (2) and RSC § 2526.1 (a) (2), has nothing to do with the RGB’s issuance of annual rent adjustment guidelines pursuant to RSL § 26-510 (b). Finally, the RGB contends that the 54-page explanatory statement accompanying order No. 40 fully complies with RSL § 26-510 (b), and that the minimum dollar increase is rational and is intended to address the problem of skewed rents caused by long-term tenancies.
*345 Discussion
This proceeding, filed two weeks before order No. 40 went into effect, and well within the four-month statute of limitations, is not barred by laches. Laches is an equitable doctrine under which a petitioner guilty of a lengthy delay in vindicating rights will be barred from bringing an action or proceeding if the delay causes prejudice to the adverse party (see Saratoga County Chamber of Commerce v Pataki, 100 NY2d 801, 816 [2003], cert denied 540 US 1017 [2003]; Matter of Schulz v State of New York, 81 NY2d 336, 348 [1993]). The general effect must also be considered (see Matter of Cantrell v Hayduk, 45 NY2d 925 [1978] [two-month delay in filing an election ballot challenge injured Westchester County voters and justified dismissal of the petition on the basis of laches even though the petition was filed within the four-month statute of limitations]; Matter of Adler v Office of Ct. Admin, of Unified Ct. Sys. of State of N.Y., 9 Misc 3d 1109[A], 2005 NY Slip Op 51458[U] [Sup Ct, NY County 2005] [laches defense upheld where delay in challenging Office of Court Administration (OCA) reclassification was not only prejudicial to OCA, but would unseat over 150 court officers promoted to lieutenant], affd 35 AD3d 260 [1st Dept 2006]).
The RGB estimates that this minimum rent provision will affect an estimated 300,000 leases or 45% of those being renewed, and that annulling the guidelines, after their effective date, would affect both tenants and owners throughout the City, who have already entered into new leases. Further, the RGB argues that if the order is vacated, it would place an additional administrative burden on DHCR, which presumably has made overcharge and other determinations, based on the order.
These arguments are not persuasive. The challenge to order No. 40 was brought before tenants and owners entered into renewal leases, and therefore, no person, or agency, could rely upon the assumption that the order would be upheld. Moreover, any financial burden (economic laches) — which has not been quantified — cannot outweigh a court’s duty to invalidate any act taken in excess of statutory authority (see Saratoga County Chamber of Commerce v Pataki [defense of economic laches rejected where tribe profited from a predictably vulnerable contract, which deprived the Legislature of its authority to act, and therefore, was void]; see also Abiele Contr. v New York City School Constr. Auth., 91 NY2d 1, 10 [1997] [the jurisdiction of an administrative board or agency consists of powers granted to *346 it by statute, and determinations made in excess of that authority are void]). Thus, this proceeding is not barred by laches.[4]
Although the RGB argues that the reason for the minimum dollar increase is rational, i.e., it is rational to attempt to equalize the rental amounts that long-term and short-term tenants pay, because the operating expenses for those apartments are the same, the minimum dollar provision of order No. 40 cannot stand, as it was enacted, ultra vires.[5]
In 1969, in response to a public housing crisis, the City Council enacted the New York City Rent Stabilization Law (see motion sequence No. 002, affirmation of Lauren G. Axelrod, exhibits C, D). In 1974, the State Legislature enacted the ETPA, which authorized, as well as reaffirmed, that local legislative bodies, in New York City and surrounding counties, may declare a housing emergency for “all or any class or classes of housing accommodations” depending on vacancy rates. By New York City Resolution No. 276 of 1974, the City Council implemented the ETPA.
Specifically, section 3 (a) of the ETPA provides, in relevant part, that
“[t]he existence of a public emergency requiring the regulation of residential rents for all or any class or classes of housing accommodations . . . shall be a *347 matter for local determination within each city, town or village. Any such determination shall be made by the local legislative body of such city, town or village ... A declaration of emergency may be made as to any class of housing accommodations if the vacancy rate for the housing accommodations in such class within such municipality is not in excess of five percent and a declaration of emergency may be made as to all housing accommodations if the vacancy rate for the housing accommodations within such municipality is not in excess of five percent.” (McKinney’s Uncons Laws of NY § 8623 [a] [emphasis added].)
Section 4 (c) of the ETPA provides that in
“a city having a population of one million or more, the rent guidelines board shall be the rent guidelines board established pursuant to the New York city rent stabilization law of nineteen hundred sixty-nine as amended, and such board shall have the powers granted pursuant to the New York city rent stabilization law of nineteen hundred sixty-nine as amended.” (McKinney’s Uncons Laws of NY § 8624 [c] [emphasis added].)
Thus, as provided above, the RGB only has the powers delegated to it pursuant to the “New York city rent stabilization law of nineteen hundred sixty-nine as amended.” (Id.) It is undisputed that when first enacted in 1969 by the City Council, the RSL applied only to class A multiple dwelling units constructed after 1947, not owned as cooperatives or condominiums, and that three months later, the City Council extended the law to hotels constructed prior to July 1, 1969.
The RSL provided for the RGB’s powers in RSL § 26-510 (b), which provides, in pertinent part:
“b. The rent guidelines board shall establish annually guidelines for rent adjustments, and in determining whether rents for housing accommodations subject to the emergency tenant protection act of nineteen seventy-four or this law shall be adjusted shall consider, among other things (1) the economic condition of the residential real estate industry in the affected area including such factors as the prevailing and projected (i) real estate taxes and sewer and water rates, (ii) gross operating maintenance costs (including insurance rates, governmen *348 tal fees, cost of fuel and labor costs), (iii) costs and availability of financing (including effective rates of interest), (iv) over-all supply of housing accommodations and over-all vacancy rates, (2) relevant data from the current and projected cost of living indices for the affected area, (3) such other data as may be made available to it. Not later than July first of each year, the [RGB] shall file with the city clerk its findings for the preceding calendar year, and shall accompany such findings with a statement of the maximum rate or rates of rent adjustment, if any, for one or more classes of accommodations subject to this law, authorized for leases or other rental agreements commencing on the next succeeding October first or within the twelve months thereafter” (emphasis added).
Notably, the language refers to setting “the maximum rate or rates of rent adjustment, if any” concerns those classes of accommodations “subject to this law.” (Id. [emphasis added].) Although the City Council did not define “classes of housing accommodations” that does not mean, as respondent maintains, that the RGB therefore has the power to determine the “classes of housing accommodations” which is, as section 3 of the ETPA states, a matter for local determination. Nor does the lack of definition matter, in light of the fact that respondent concedes that in 1974 the City Council found that an emergency existed for “all classes of housing accommodations” and that no classes are treated differently, other than long-term rental units in hotels. Although the Rent Law of 2003 (L 2003, ch 82, § 1) restricts the City Council’s current authority to create classes of accommodations subject to rent stabilization (see reply mem of law of proposed amicus curiae, dated Oct. 6, 2008, at 4), that does not mean that, therefore, the RGB now has that power. The fact that the Rent Law of 2003 was enacted actually cuts the other way, as it is evidence that the New York State Legislature, which authored the ETPA, believed that the City Council was originally granted that authority.[6]
The Appellate Division, Second Department, decision in Matter of New York State Tenants & Neighbors Coalition, Inc. v Nassau County Rent Guidelines Bd. (53 AD3d 550 [2008], supra) is further support for this court’s conclusion that the RGB may *349 not impose a separate rent increase for a class of accommodation not recognized by the City Council. The Second Department held that different rent increases cannot be based upon a tenant’s gross aggregate family income, when Nassau County’s Legislature had not created any classes of accommodations based on tenant income. The Second Department ruled that the Nassau County Rent Guidelines Board did not “have the authority to create a separate rent adjustment guideline based on tenant income” because classes of accommodations are created “in the first instance, by the legislative body of the relevant city, town, or village” under ETPA § 3 (id. at 551-552).[7] As a result of this decision, the RGB concedes that it may not create classes of accommodations based on factors, such as the income of the tenants, that are not sufficiently connected to the housing accommodations themselves. Although the RGB maintains that the challenged increase is not based on indicia regarding the tenants, but rather, indicia regarding the housing accommodations themselves, that distinction cannot overcome the fact that the City Council, not the RGB, had the power to create separate classes.[8]
In any event, where the power conferred by statutory language is not free from doubt, the power may not be taken by implication (Matter of City of New York v Prendergast, 202 App Div 308, 316 [1st Dept 1922]). As the RGB’s power is in doubt, a court should not permit a quasi-legislative agency, with a nine-member board, appointed by the Mayor of New York City, to perform a function originally designated to the legislative body, which enacted the RSL.[9]
It is hereby ordered that the motion of the New York City Council seeking leave to file a memorandum of law as an amicus curiae in farther support of the petition (motion sequence No. 002) is granted; and it is further ordered that the petition *350 (motion sequence No. 001) to vacate a portion of the 2008 Apartment and Loft Law Order No. 40, regarding the minimum dollar increase, is granted, without costs and disbursements, and the parties are directed to settle judgment.

. The economic conditions of the tenants are not a consideration in this proceeding. However, the court notes that petitioners are represented by the Legal Aid Society, thereby attesting to their indigency. The court also notes that by virtue of the involvement of long-term tenancies, many of the tenants are likely to be senior citizens.

. The court appreciates the submission of the amicus curiae brief, as it was the one most helpful to the court.

. A similar challenge has been recently brought under order No. 41, and the parties therein have agreed by stipulation, dated November 9, 2009, to be bound by this decision (see New York State Tenants & Neighbors Coalitions, Inc. v New York City Rent Guidelines Bd., index No. 114718/09). Accordingly, as the disputed issue is reoccurring, it is important to reach the merits.

. The 54-page explanatory statement accompanying order No. 40 complies with the requirements of RSL § 26-510 (b). Petitioners argue that the sole portion of the explanatory statement relating to the minimum dollar increase is a 21-page memorandum prepared by the RGB’s staff, and only released to the RGB the morning of June 19, 2008, the very day of the final vote. Accordingly, petitioners argue that this document could not possibly have been considered, much less adopted by the RGB prior to its vote on the final order. However, at the June 19 public meeting of the RGB (record at 2672-2730), a vote was taken at the request of Director Holder to adjourn the meeting to more fully consider this memorandum, and the motion was defeated by a vote of 7 to 2 (record at 2697). Seven members of the RGB did not believe that an adjournment was necessary to vote on a minimum dollar increase. Director Adams stated that the memorandum did not raise any issues that had not been discussed and testified about previously (record at 2694-9). According to the memorandum itself, a significant amount of testimony was received by the RGB during the last two months of the guideline process on the subject of promulgating a guideline that provides for a minimum dollar amount of rent adjustment tied to the length of a tenant’s tenure (see record at 2650, 2739, 2740).

. Although not the issue here, after 2003, the State Legislature would have to create any classes of accommodations.

. The factors to be considered by the Nassau County Rent Guidelines Board are set forth in ETPA § 4 (b) (McKinney’s Uncons Laws of NY § 8624 [b]), and are identical to the factors set forth in RSL § 26-510 (b) that the RGB must consider each year.

. Moreover, it cannot be said that the minimum dollar increase does not relate to tenants, as it relates to the tenant’s choice to remain in the apartment.

. Stein v Rent Guidelines Bd. for City of N.Y. (127 AD2d 189 [1st Dept 1987]) does not dictate a different result. Although the Appellate Division, First Department, does not appear to have addressed the “classes of housing accommodations” arguments raised herein, it appears that a two-tier vacancy increase, which does not regulate tenants in occupancy, does not create impermissible, separate classes of accommodations.