[946 NE2d 720, 921 NYS2d 622]

In the Matter of MERCEDES CASADO et al., Respondents, v MARVIN MARKUS, as Chair of the New York City Rent Guidelines Board, et al., Appellants.

Argued February 8, 2011; decided March 24, 2011

**POINTS OF COUNSEL**

*Michael A. Cardozo, Corporation Counsel,* New York City (*Fay Ng, Pamela Seider Dolgow, Spencer Fisher* and *Virginia Waters* of counsel), for appellants. In establishing guidelines for rent adjustments, the Rent Guidelines Board has the authority to consider distinctions among housing accommodations determined by the Legislature to be subject to the Rent Stabilization Law (RSL) and the Emergency Tenant Protection Act (ETPA). For decades, the Board has been making distinctions among accommodations when it has adopted guidelines and the ETPA and the RSL do not prohibit this long-standing practice. The Legislature has acquiesced to the Board's construction of its authority under the ETPA and the RSL by its failure to amend the statutes. (*State of New York v Patricia II.,* 6 NY3d 160; *Stein v Rent Guidelines Bd. for City of N.Y.,* 127 AD2d 189;

*Matter of Catholic Med. Ctr. of Brooklyn & Queens v Department of Health of State of N.Y.*, 48 NY2d 967; *Matter of Mercy Hosp. of Watertown v New York State Dept. of Social Servs.*, 79 NY2d 197; *Matter of Apartment House Council of Nassau County, Inc. v Nassau County Rent Guidelines Bd.*, 52 AD3d 702; *Incorporated Vil. of Great Neck Plaza v Nassau County Rent Guidelines Bd.*, 60 AD2d 593; *Presbyterian Hosp. in City of N.Y. v Maryland Cas. Co.*, 90 NY2d 274; *People v Ortega*, 69 NY2d 763; *Matter of Consolidated Edison Co. of N.Y. v Department of Envtl. Conservation*, 71 NY2d 186; *Kuppersmith v Dowling*, 93 NY2d 90.)

*Legal Aid Society*, New York City (*Ellen B. Davidson, Steven Banks, Scott Rosenberg* and *Judith Goldiner* of counsel), and *South Brooklyn Legal Services Inc.*, Brooklyn (*John C. Grey, Edward Josephson* and *Rachel Hannaford* of counsel), for respondents. I. The Rent Guidelines Board exceeded its authority when it issued supplemental longevity increases in orders 40 and 41 and thus those orders are void. (*People v Mobil Oil Corp.*, 48 NY2d 192; *Strauch v Town of Oyster Bay*, 263 App Div 833; *Matter of KSLM-Columbus Apts. v New York State Div. of Hous. & Community Renewal*, 6 AD3d 28, 5 NY3d 303; *La Guardia v Cavanaugh*, 53 NY2d 67; *Matter of Tall Trees Constr. Corp. v Zoning Bd. of Appeals of Town of Huntington*, 97 NY2d 86; *Matter of Tze Chun Liao v New York State Banking Dept.*, 74 NY2d 505; *Matter of Shankman v Axelrod*, 73 NY2d 203; *Matter of City of New York v State of N.Y. Commn. on Cable Tel.*, 47 NY2d 89; *Vink v New York State Div. of Hous. & Community Renewal*, 285 AD2d 203; *Matter of Foy v Schechter*, 1 NY2d 604.) II. The Rent Guidelines Board's reliance on legislative inaction and past practices does not allow it to avoid the plain meaning of its authorizing statute. (*Roberts v Tishman Speyer Props., L.P.*, 13 NY3d 270; *Clark v Cuomo*, 66 NY2d 185; *United States v Price*, 361 US 304; *Flanagan v Mount Eden Gen. Hosp.*, 24 NY2d 427; *Matter of Fanelli v New York City Conciliation & Appeals Bd.*, 90 AD2d 756, 58 NY2d 952; *Matter of 2084-2086 BPE Assoc. v State of N.Y. Div. of Hous. & Community Renewal*, 15 AD3d 288; *Matter of Ansonia Residents Assn. v New York State Div. of Hous. & Community Renewal*, 75 NY2d 206; *Rent Stabilization Assn. of N.Y. City v Higgins*, 83 NY2d 156; *Festa v Leshen*, 145 AD2d 49; *Stein v Rent Guidelines Bd. for City of N.Y.*, 127 AD2d 189.)

*Rosenberg & Estis, P.C.*, New York City (*Jeffrey Turkel* and *Alexander Lycoyannis* of counsel), for Rent Stabilization Association of New York City, Inc. and another, amici curiae. Rent

Guidelines Board (RGB) Order Nos. 40 and 41 should be reinstated as a valid exercise of RGB's authority under Rent Stabilization Law (Administrative Code of City of NY) § 26-510 (b). (*Matter of Community Hous. Improvement Program v New York State Div. of Hous. & Community Renewal*, 230 AD2d 66; *City of New York v New York State Div. of Hous. & Community Renewal*, 97 NY2d 216; *Stein v Rent Guidelines Bd. for City of N.Y.*, 127 AD2d 189; *Matter of Chessin v New York City Conciliation & Appeals Bd.*, 100 AD2d 297, 62 NY2d 977; *Coalition Against Rent Increase Passalongs v Rent Guidelines Bd. for City of N.Y.*, 104 Misc 2d 101; *Department of Fin. of City of N.Y. v New York Tel. Co.*, 262 AD2d 96, 94 NY2d 755; *Matter of Kolb v Holling*, 285 NY 104; *Matter of Lockport Union-Sun & Journal v Preisch*, 8 NY2d 54; *Household Fin. Corp. v Goldring*, 263 App Div 524, 289 NY 574.)

*Elizabeth R. Fine, General Counsel, the Council of the City of New York*, New York City (*Jeffrey P. Metzler* and *Lauren G. Axelrod* of counsel), for the Council of the City of New York, amicus curiae. I. The Rent Guidelines Board exceeded its statutory authority by setting a different rate of rent increase for long-term tenants. (*Abiele Contr. v New York City School Constr. Auth.*, 91 NY2d 1; *Matter of Flynn v State Ethics Commn., Dept. of State, State of N.Y.*, 87 NY2d 199; *Saltser & Weinsier, Inc. v McGoldrick*, 295 NY 499; *People ex rel. City of Olean v Western N.Y. & Pa. Traction Co.*, 214 NY 526; *Matter of Quinby v Public Serv. Commn.*, 223 NY 244; *Roberts v Tishman Speyer Props., L.P.*, 13 NY3d 270; *Lindh v Murphy*, 521 US 320; *Field v Mans*, 516 US 59; *Two Guys from Harrison-N.Y. v S.F.R. Realty Assoc.*, 63 NY2d 396.) II. The Rent Guidelines Board cannot substitute its own policy preferences for those of the Legislature. (*Weiss v City of New York*, 95 NY2d 1; *Matter of Chemical Specialties Mfrs. Assn. v Jorling*, 85 NY2d 382; *Manocherian v Lenox Hill Hosp.*, 84 NY2d 385; *Shapiro v Dwelling Mgrs.*, 92 AD2d 52, 60 NY2d 612; *Boreali v Axelrod*, 71 NY2d 1; *Ragsdale v Wolverine World Wide, Inc.*, 535 US 81; *FDA v Brown & Williamson Tobacco Corp.*, 529 US 120; *Kerwick v New York State Bd. of Equalization & Assessment*, 117 AD2d 65.) III. The Rent Guidelines Board's remaining arguments have no merit. (*Roberts v Tishman Speyer Props., L.P.*, 13 NY3d 270; *Clark v Cuomo*, 66 NY2d 185; *United States v Price*, 361 US 304; *Stein v Rent Guidelines Bd. for City of N.Y.*, 127 AD2d 189; *Matter of Muriel Towers Co. v City of N.Y. Rent Guidelines Bd.*, 117 Misc 2d 837, 94 AD2d 982, 60 NY2d 643; *Matter of Chessin v New York City Conciliation & Appeals Bd.*, 100 AD2d 297, 62 NY2d 977;

*Coalition Against Rent Increase Passalongs v Rent Guidelines Bd. for City of N.Y.*, 104 Misc 2d 101; *Matter of Cintron v Calogero*, 15 NY3d 347; *Matter of Crucible Materials Corp. v New York Power Auth.*, 13 NY3d 223; *People v Gilmour*, 98 NY2d 126.)

### OPINION OF THE COURT

SMITH, J.

Petitioners challenge the validity of two orders of the New York City Rent Guidelines Board (RGB) that make a distinction between low-rent apartments in which there has been no recent vacancy and other apartments, allowing larger rent increases, in percentage terms, for apartments in the former category. We hold that the RGB has the power to make this distinction.

I

The RGB orders in issue here govern rent levels for the years ended September 30, 2009 and September 30, 2010. The two orders are identical in all relevant ways except for the amounts of the increases allowed. The parties focus on the first of the two, as will we.

The part of that order that concerns us sets out the rent increases permitted in renewal leases of apartments. It makes separate provision for apartments in which heat is provided by the landlord at no charge to the tenant, and those in which it is not; and it also distinguishes between one-year and two-year renewal leases. In each category, the order authorizes a percentage rent increase: for apartments where heat is provided, 4.5% for a one-year lease and 8.5% for a two-year lease; where heat is not provided, 4% for a one-year lease and 8% for a two-year lease.

However, "where the most recent vacancy lease was executed **six** years or more prior to the date of the renewal lease under this Order," the order makes the percentage increases subject to a dollar floor, calculated to affect apartments in which the old rent was less than $1,000 a month. For example, where heat is provided, the authorized increase in a one-year renewal lease is 4.5% or $45, whichever is greater; for a two-year lease it is 8.5% or $85, whichever is greater; and so forth. Thus, if the old rent on an apartment that had had no vacancy for six years or more was, say, $450, a landlord who provided heat and offered a one-year renewal lease could charge an additional $45—a 10% increase.

The RGB's purpose in taking this approach was to remedy what it saw as an inequity. Ordinarily, the permissible rent for a rent-stabilized apartment depends on the rent charged in the past, with relatively modest increases authorized annually by the RGB, and larger increases (or, at higher rent levels, decontrol) when the apartment becomes vacant. But the costs of maintaining an apartment and providing services to its occupant are often not in proportion to historical rents. Where the rent is relatively small and there is no vacancy for many years, the disproportion can become acute, with small annually-authorized increases that do not come close to covering increased costs. Those costs have to be paid somehow, so if percentage increases are uniform, the increases must be set at a level that allows landlords to make larger profits on the apartments that get larger increases, and to use those profits to pay the costs for the lower-rent apartments. In other words, tenants paying higher rents must subsidize those paying lower rents.

Perhaps that subsidy could be justified on the ground that tenants paying higher rents are generally wealthier. An analysis by the RGB staff, however, showed that the subsidy appears to be unfair even when tenant income is taken into account. The analysis (which excluded senior citizens receiving rent increase exemptions) showed that the median rent-to-income ratio for tenants living in their apartments six years or more was lower than the same ratio for all tenants—and would continue to be lower even if minimum increases in the range of those at issue here were imposed. The RGB therefore decided to adopt the minimums.

This case began as two CPLR article 78 proceedings, one relating to each of the RGB's orders; the proceedings have been consolidated. Petitioners are two rent-stabilized tenants, both of whom have lived in their apartments for more than six years and pay less than $1,000 a month in rent, and a tenants' rights organization. They seek to annul the orders to the extent they allow minimum dollar increases. Petitioners make no claim that the minimum increases are unreasonable or unfair, but assert that the RGB lacks the power to permit them.

Supreme Court granted the relief petitioners sought (27 Misc 3d 340 [2010]), and the Appellate Division affirmed (*Matter of Casado v Markus*, 74 AD3d 632 [1st Dept 2010]). We granted leave to appeal (15 NY3d 712 [2010]), and now reverse.

## II

Petitioners' primary argument is that the RGB has no power to create classes of housing accommodations—meaning, petitioners say, that the RGB is forbidden to draw any distinctions within any of the three "classes" of housing accommodations—apartments, hotel units and lofts—established by the New York City Council. Petitioners base this argument on two provisions of law: New York City Administrative Code § 26-510 (b), which is part of the Rent Stabilization Law (RSL), originally enacted in 1969 by the New York City Council (Local Law No. 16 [1969] of City of NY, codified as amended at Administrative Code § 26-501 *et seq.*); and section 3 (a) of the Emergency Tenant Protection Act (ETPA), enacted by the State Legislature in 1974 (L 1974, ch 576, § 4, codified as amended at McKinney's Uncons Laws of NY § 8621 *et seq.*). At the same time it enacted the ETPA, the Legislature repealed and reenacted the parts of the RSL relating to the RGB, making no relevant change in the language of section 26-510 (b) (L 1974, ch 576, § 9).

In its current form, section 26-510 (b) authorizes the RGB to "establish annually guidelines for rent adjustments," and to file with the City Clerk annually "a statement of the maximum rate or rates of rent adjustment, if any, for one or more classes of accommodations" (Administrative Code § 26-510 [b]). ETPA § 3 (a) (Uncons Laws § 8623 [a]) says that in New York City "[t]he existence of [a] public emergency requiring the regulation of residential rents for all or any class or classes of housing accommodations . . . shall be a matter for local determination . . . by the local legislative body." (The power given the New York City Council by this section of the ETPA was largely revoked by the State Legislature in 2003 [*see* L 2003, ch 82, § 1, codified at Uncons Laws § 8605].) Petitioners claim that these enactments, read together, reserve the power to create "classes of housing accommodations" to the City Council exclusively, and that the City Council has not delegated and could not delegate to the RGB any power to draw distinctions between accommodations of the same class. Petitioners' argument does not persuade us.

On its face, the RSL does not prohibit the RGB from distinguishing some kinds of apartments from others. The language that empowers the RGB to establish "the maximum rate or rates of rent adjustment . . . for one or more classes of accommodations" (Administrative Code § 26-510 [b]) does not, as a simple matter of grammar, say or imply that there must be

only one "maximum rate . . . of rent adjustment" for each class. And the ETPA language that petitioners rely on (which has been in any event largely nullified by later legislation) has nothing to do with the issue before us. To say that a "local legislative body" may determine when a "public emergency" exists requiring rent regulation for "all or any class or classes of housing accommodations" (Uncons Laws § 8623 [a]) is to say nothing at all about whether, or by whom, multiple levels of rent increases may be permitted within each class.

In fact, the RGB has always made some distinctions between apartments, even though apartments are generally considered one "class" of housing accommodation. Most obviously, the RGB prescribes different rental rates for one-year and two-year leases. Petitioners say that this is an exception to the general rule against the making of distinctions within a "class," and assert that the exception is authorized by Administrative Code § 26-511 (c) (4) (reenacted by the State Legislature, L 1985, ch 907, § 1). That code provision, however, says nothing about the RGB's power to make distinctions: it says that landlords shall be required "to grant a one or two year . . . lease at the option of the tenant." It is true that this requirement would make little sense if rent increases for one- and two-year leases had to be the same, because almost all tenants would elect two-year leases; but this reinforces our point—the Legislature must have assumed that the RGB would make common-sense distinctions when it fixed the increases allowed for apartments.

The RGB has made a number of other distinctions within the apartment "class." It has allowed landlords to charge extra when electricity is included in the rent, and to collect "fuel adjustment surcharges" (see Stein v Rent Guidelines Bd. for City of N.Y., 127 AD2d 189, 190, 196 [1st Dept 1987]; Matter of Chessin v New York City Conciliation & Appeals Bd., 100 AD2d 297, 304 [1st Dept 1984]). Indeed, the order challenged in this case distinguishes between apartments in which heat is provided by the landlord and those in which it is not. Petitioners say that all these distinctions are invalid, and have survived only because the power to create them has never been challenged; they assert that they could, but chose not to, attack the heat-based distinction contained in the order now at issue. To us, however, the fact that such distinctions have long been accepted without question is further confirmation that nothing in the governing legislation can fairly be read to prohibit them.

We therefore reject petitioners' argument that the RGB may not permit any increases that are larger, in percentage terms,

for some apartments than for others. But petitioners also attack the dollar minimum increases now at issue on a narrower ground. They point out that the problem addressed by these minimums—the plight of landlords who are unable for a long time to obtain vacancy increases—has been dealt with to some degree by state legislation. New York City Administrative Code § 26-511 (c) (5-a), adopted by the Legislature in 1997 (L 1997, ch 116, § 19), governs the rent increases permitted after an apartment becomes vacant. In general, the permissible vacancy increase is 20%, but where there has been no previous such increase within eight years "the legal regulated rent may be further increased" according to a formula stated in the legislation. Petitioners argue, in substance, that by giving landlords this form of relief, the Legislature implicitly prohibited the RGB from giving another form of relief for the same evil.

Again, petitioners' argument does not persuade us. There is no conflict between the RGB's dollar minimum increases, which give some benefit to landlords of low-rent, slow-turnover apartments while their tenants remain in possession, and the state legislation, which gives relief regardless of rent level after a slow-turnover apartment has finally become vacant. It is true that some landlords may, eventually, benefit from both provisions, but the two benefits, even where cumulative, are not logically inconsistent. Nor is the state legislation so detailed and comprehensive as to imply that the Legislature has preempted the field.

Petitioners rely on *Matter of New York State Tenants & Neighbors Coalition, Inc. v Nassau County Rent Guidelines Bd.* (53 AD3d 550 [2d Dept 2008]), which invalidated an order of the Nassau County Rent Guidelines Board permitting rent increases that would vary with tenants' income. The *New York State Tenants* Court held that "the Board exceeded its statutory authority in establishing a separate class of accommodation based on tenant income" (*id.* at 552). To the extent that the Second Department in *New York State Tenants*—like the First Department here—accepted the argument that there can be no distinction in the rent increases allowed within a "class of accommodation" it was mistaken, for the reasons we have explained.

This does not mean that the result in *New York State Tenants* was necessarily wrong. It could be argued that, in making distinctions based on tenant income, the Nassau County Rent Guidelines Board trespassed on a sensitive policy area that is

within the Legislature's special province (*see Boreali v Axelrod*, 71 NY2d 1 [1987]). We do not pass on the merit of that argument as it applies to the *New York State Tenants* case. But we find the argument inapplicable here, where the RGB has dealt with a narrower, more technical and less sensitive issue.

Accordingly, the order of the Appellate Division should be reversed, with costs, and the petitions dismissed.

CIPARICK, J. (dissenting). Because I believe that the New York City Rent Guidelines Board (RGB or Board) lacks authority to promulgate orders imposing dollar minimum increases solely on tenants who have been living in their apartments for six years or more and paying less than $1,000 per month in rent, I respectfully dissent.

I find it unnecessary to reach the question of whether the RGB has authority to create any distinctions whatsoever within the extant classes of accommodation, since it patently lacks power to draw the particular distinction at issue here. As the majority explains, the Board's authority is derived from Administrative Code of the City of NY (Rent Stabilization Law of 1969) § 26-510 (b), under which it may "establish annually guidelines for rent adjustments." Even assuming that the Board, pursuant to this delegation, can set multiple rates for each class of housing, its ability to do so is limited by well-settled principles of administrative law.

Under the two orders at issue on this appeal, a tenant who has been living in an apartment for six years or more is subject to a minimum increase, whereas a more recent tenant in an identical apartment paying identical rent is not so subject. The rationale behind these orders is apparently, as Supreme Court explained, "to attempt to equalize the rental amounts that long-term and short-term tenants pay, because the operating expenses for those apartments are the same" (27 Misc 3d 340, 346 [2010]), yet long-term tenants generally pay less than more recent tenants for the same apartments.

Of course, it is no coincidence that long-term tenants are the greatest beneficiaries of rent stabilization, or that, in the majority's words, "tenants paying higher rents must subsidize those paying lower rents" (majority op at 334). This inequality is due, in large part, to the Rent Regulation Reform Act of 1997 (L 1997, ch 116, § 19), which amended the Rent Stabilization Law to provide that a vacancy lease can increase a unit's rent by up to 20%, and even more where there has been no vacancy

increase in the prior eight years or the rent is particularly low (Administrative Code of City of NY § 26-511 [c] [5-a]). The evident purpose of these changes was to bring apartments closer to market rent as they become vacated (*see* Governor's Approval Mem, Bill Jacket, L 1997, ch 116, at 38-39). Critically, the Legislature did not couple the large rent increases it was authorizing for new tenants with any alteration in how rent increases were calculated for current tenants. Under this scheme, by design, there is a large rent gap between new tenants and those whose tenancies predate the amendment, and it will increase as many apartments experience repeated vacancies.

"It is a fundamental principle of administrative law that an agency cannot promulgate rules or regulations that contravene the will of the Legislature" or are " 'out of harmony' with an applicable statute" (*Weiss v City of New York*, 95 NY2d 1, 4-5 [2000]), yet the RGB did exactly that. By creating varied rates with the intended effect of minimizing the degree to which landlord costs are disproportionately covered by higher-paying apartments, the Board sought to mitigate a rent disparity the Legislature created.

More broadly, it is axiomatic that, "[a]s an arm of the executive branch of government, an administrative agency may not, in the exercise of rule-making authority, engage in broad-based public policy determinations" (*Rent Stabilization Assn. of N.Y. City v Higgins*, 83 NY2d 156, 169 [1993], citing *Boreali v Axelrod*, 71 NY2d 1, 9 [1987]). It strikes me as a great usurpation of power for the RGB to create separate increases based on what it perceives as a structural inequity in the rent laws. The Board found it problematic that long-term tenants shoulder such a small percentage of landlord costs, and this determination, in our view, crosses "the difficult-to-define line between administrative rule-making and legislative policy-making" (*Boreali*, 71 NY2d at 11).

Indeed, the RGB has conceded throughout this litigation that any distinctions in rate increases must be based on factors sufficiently connected to the housing accommodations themselves.* It seems to have accepted the reasoning of *Matter of New York State Tenants & Neighbors Coalition, Inc. v Nassau County*

---

* In Supreme Court, "the RGB concede[d] that it may not create classes of accommodations based on factors, such as the income of the tenants, that are not sufficiently connected to the housing accommodations themselves." (27 Misc 3d at 349.) Far from repudiating this view on appeal, the Board reiter-

*Rent Guidelines Bd.* (53 AD3d 550, 552 [2d Dept 2008]), which relied on *Boreali* and *Weiss* in striking down a rent increase contingent on tenants' income. We see no relevant distinction between creating varied rates of increase based on income, which the Board concedes would be ultra vires, and varied rates based on duration of tenancy.

Finally, I note that under the majority's reasoning there is no limit to the amount that the Board can increase rents at the lowest end of the rent-stabilized spectrum for the purpose of evenly distributing maintenance costs that in many buildings are shared by long-term, newer, and market-rate tenants. To me, it is obvious that such equalization is anathema to the purpose of the Rent Stabilization Law, and therefore beyond the Board's authority.

Accordingly, I would affirm the order of the Appellate Division.

Chief Judge LIPPMAN and Judges GRAFFEO, READ and PIGOTT concur with Judge SMITH; Judge CIPARICK dissents and votes to affirm in a separate opinion in which Judge JONES concurs.

Order reversed, etc.

---

ated during oral argument before us that a rate distinction based on income would be inappropriate.